UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OLEKSANDR V. M.,[1]

            Petitioner,

     v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, et al.,

            Respondents.

No.  1:26-cv-01379-JLT-FJS (HC)

FINDINGS AND RECOMMENDATION TO
GRANT PETITIONER'S MOTION FOR
RULING, DISMISS MOTION FOR
EXPEDITED RELIEF, AND DENY
PETITION

[ECF Nos. 1, 14, 15]

[21-DAY DEADLINE]

Petitioner Oleksandr V. M. is an immigration detainee proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

I.     <u>BACKGROUND</u>

Petitioner filed the instant petition on February 17, 2026. (ECF No. 1.) He is a citizen of Ukraine who entered the United States on December 11, 2021, and requested political asylum with immigration authorities at a border patrol checkpoint. (ECF No. 1 at 3.) After being detained for two days, Petitioner was released into the United States on an Order of Supervision

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

("OSUP"). (ECF No. 1 at 3.) Petitioner then resided in the United States for almost four years. He obtained a work permit, rented a house, paid taxes and incurred no criminal record. (ECF No. 1 at 3.)

On April 22, 2025, Petitioner left his home for work when Immigration and Customs Enforcement ("ICE") blocked his path, pointed firearms at him, and ordered him out of the vehicle. (ECF No. 1 at 3.) Petitioner was arrested but was not provided a reason for his arrest or written documentation. (ECF No. 1 at 3.) He has been detained in ICE custody since then.

Petitioner was ordered removed by an immigration judge on December 22, 2025. (ECF No. 18-2.) Petitioner has appealed the decision to the Board of Immigration Appeals ("Board"). The order of removal is now pending before the Board. (ECF No. 1 at 3.)

On February 19, 2026, the district court ordered Respondents to file a response to the petition. (ECF No. 9.) Respondents were granted thirty (30) days to file a response.  Respondents did not file a response within the allotted time. On March 25, 2026, Petitioner filed a motion for ruling on the petition in light of Respondents' failure to respond. (ECF No. 14.) On April 9, 2026, in response to Petitioner's motion, Respondents filed a late response. (ECF No. 18.) Respondent moves to dismiss the petition as successive. On April 16, 2026, Petitioner filed a reply. (ECF No. 19.)

II.      SUCCESSIVE PETITION

Respondents note that Petitioner has previously sought habeas relief in this Court on two occasions: *Vladimirovich v. Giles, et. al.*, 2025 WL 3208979, No. 1:25-cv-00953-SKO (HC), (E.D. Cal. Oct. 10, 2025), *reconsideration denied*, No. 1:25-CV-00953-SKO (HC), 2025 WL 3208816 (E.D. Cal. Nov. 17, 2025); *Melnyk v. Warden of the Golden State Annex ICE Detention Facility, et. al.*, 2026 WL 504597, No. 1:25-cv-01431-JLT-EPG (E.D. Cal. Feb. 24, 2026). Respondents allege that because the instant petition presents the same claims that were conclusively decided in the two previous petitions, the instant petition must be dismissed as successive. Although a very close call, the court disagrees.

The government invokes 28 U.S.C. § 2244(a) in characterizing Petitioner's claims here as successive. Resps.' Mot. to Dismiss at 3 (ECF No. 18). The petition, however, was filed under 28

2

U.S.C. § 2241. Pet. at 1 (ECF No. 1). "While the Anti-Terrorism and Effective Death Penalty Act (AEDPA) of 1996 bars 'second or successive' habeas petitions, 28 U.S.C.§ 2244(b), these prohibitions do not apply to § 2241 habeas petitions filed by DHS detainees." *Straube v. Chertoff*, 560 F. Supp. 2d 983, 985 (S.D. Cal. 2008) (citing *Barapind v. Reno*, 225 F.3d 1110, 1111 (9th Cir. 2000). *But see Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 (11th Cir. 2008) (holding that section 2244(a) "second or successive" gate-keeping provision applies to immigration detainees raising the same claims that have already been adjudicated in a previous petition).

Even if section 2244 does not apply to the section 2241 petition here, the doctrine of "abuse of the writ" could nevertheless frustrate this third petition. "Generally, the abuse of the writ doctrine 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'" *Petrocelli v. Angelone*, 248 F.3d 877, 884 (9th Cir. 2001) (quoting *Calderon v. United States Dist. Ct.*, 163 F.3d 530, 538 (9th Cir. 1998) (en banc)). And enactment of the AEDPA did not abrogate application of the precedent for abuse of the writ. *Felker v. Turpin*, 518 U.S. 61, 664 (1996). *See Barapind*, 225 F.3d at 1111-12 (applying abuse of the writ doctrine to alien detainee). "[I]n determining whether a pro se petitioner has abused the writ, we do not attribute to the pro se petitioner the knowledge of a lawyer." *Gunn v. Newsome*, 881 F.2d 949, 962 (11th Cir. 1989).

Here, there is little doubt that Petitioner could have filed on the grounds he now pursues in his earlier two petitions. In the first petition, Petitioner alleged that his detention was unlawful because he had been granted temporary protected status. *Vladimirovich*, 2025 WL 3208979, at * 1. In the second petition, Petitioner alleged that his prolonged detention without a bond hearing violated his procedural due process rights. *Melnyk*, 2026 WL 504597 (*See* ECF No. 1.) In the instant petition, Petitioner appears to raise two claims. First, he claims that because he was at liberty under supervision for several years, he is subject to section 1226(a), not section 1225(b). (ECF No. 1 at 2.) Second, Petitioner claims that his re-detainment violated his procedural due process rights. (ECF No. 1 at 3.) The factual predicate for both theories existed when either of the two previous petitions were filed. Petitioner does not and, it seems, cannot disavow awareness of

3

that predicate.

In *McClesky*, the Supreme Court examined the scope and procedure of the abuse of the writ doctrine:

> When a prisoner files a second or subsequent habeas petition, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's ... If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

499 U.S. 467, 494-95 (1991).

Here, the government argues the instant petition is second or successive, but the government does not specifically claim an abuse of the writ. When considering the abuse of the writ doctrine in a section 2241 proceeding, AEDPA's second or successive provisions do not govern, but they "certainly inform [judicial] consideration." *Calderon v. Thompson*, 523 U.S. 538, 558 (1998). "[A]pplication of the doctrine 'should be expected to yield a resolution in harmony with AEDPA.'" *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 442 (3d Cir. 2021) (quoting *Calderon*, 523 U.S. at 558). And while a court can raise abuse of the writ *sua sponte*, a petitioner must still have proper notice of the claim he must rebut, and the government still bears the burden of proof. *Alaimalo v. United States*, 645 F.3d 1042, 1065 (9th Cir. 2011) (Korman, J., dissenting); *Femia v. U.S.*, 47 F.3d 519, 523 (2nd Cir. 1995). In this case, the court does not find that Petitioner was given sufficient notice of the abuse of the writ doctrine such that the burden to disprove abuse shifted to him. This is especially so given Petitioner is not a trained legal professional. *See Corjasso v. Ayers*, 278 F.3d 874, 878 (9th Cir. 2002), *as amended on denial of reh'g* (Feb. 8, 2002) ("Pro se habeas petitioners may not be held to the same technical standards as litigants represented by counsel.") Thus, while the court finds some merit to Respondent's arguments that Petitioner's latest petition is "successive," the court cannot recommend dismissing the petition under the current posture of the case. Accordingly, the court will turn to the merits of the petition.

4

III.     REVIEW OF PETITION

Petitioner alleges his procedural due process rights have been violated by Respondents in maintaining his detention is mandatory pursuant to 28 U.S.C. § 1225(b). (ECF No. 1 at 2.) To evaluate this claim, the court needs to determine the authority that applies to his detention and then evaluate whether the terms of his detention comply with that authority and with constitutional due process. *See generally Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *1-4 (N.D. Cal. Sept 12, 2025). *See also Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023) (holding that 8 U.S.C. § 1226(a) and 8 U.S.C. § 1226(c) "apply to discrete categories of non-citizens—and *not* to different stages of a noncitizen's legal proceedings") (emphasis in original).

Respondents assert that Petitioner is mandatorily detained under 8 U.S.C. § 1225(b). Resps.' Br. 1 (ECF No. 18). In his prior petition, Petitioner did not contest Respondents' assertion that his detention was under section 1225(b). Now, however, he contends that he is detained pursuant to the discretionary authority of section 1226(a). (ECF No. 1 at 2.) Petitioner's argument has merit for two reasons. First, this court and courts' nationwide have rejected Respondents' position that aliens similarly situated to Petitioner are "applicants for admission" subject to mandatory detention under Section 1225(b)(2)(A). *See, e.g., J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO (HC) (E.D. Cal. Oct. 16, 2025); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB (HC), 2025 WL 32879514 (E.D. Cal. Oct. 9, 2025); *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT-SKO (HC), 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025). Here, Petitioner spent approximately four years after being released on supervision prior to his re-detention. And as the court has previously determined, a detainee possesses a liberty interest in his release on supervision. *J.S.H.M.*, 2025 WL 2938808, at *18 (citing *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)). Second, the March 3, 2026, detention hearing was determined on the merits, not on the basis that the immigration judge lacked jurisdiction because Petitioner was under mandatory detention. (ECF No. 18-1.) That distinction suggests that the immigration judge, at least, believed that the detention determination was not under section 1225.

Having determined that 1226(a) informs the nature of Petitioner's detention, the court

evaluates whether his procedural due process rights were violated when the government revoked his supervision and re-detained him without notice or opportunity to be heard. (ECF Nos. 1 at 3; 19 at 3.) He claims he was entitled to a pre-deprivation process that he did not receive. Yet "the Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." *Demore v. Kim*, 538 U.S. 510, 531 (2003); *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure"). Moreover, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. at 522, *quoted in Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

In evaluating a due process claim in immigration detentions like Petitioner's, the Ninth Circuit used the *Mathews* test and assumed (without deciding) that it applied to a due process claim for a second bond hearing in a section 1226(a) detention. *Id*. at 1206-07. Like *Rodriguez Diaz*, Petitioner is subject to § 1226(a) detention, and he was given a bond hearing on March 3, 2026, pursuant to the court's order in the previous case. *See Melnyk*, 2026 WL 504597. Thus, the court finds application of the *Mathews* test in this case appropriate.

Under the *Mathews* test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." *Mathews*, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In the first factor, the court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. Here, Petitioner has been detained for one year. Prior to re-detention, he was at liberty for four years. This permitted him to pursue gainful employment, rent a home, pay taxes, and contribute to his community. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In addition, in *Rodriguez Diaz*, the Ninth Circuit considered a similar length of detention and "assume[d] that [petitioner's] detention qualifies as 'prolonged' in a general sense." *Rodriguez Diaz*, 53 F.4th at 1207 (citing, *inter alia*, *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011)). A noncitizen's private interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011).

In *Rodriguez Diaz*, the Ninth Circuit further held that "in evaluating the first prong of the *Mathews* analysis, it is not sufficient to simply count the months of detention and leave it at that." 53 F.4th at 1208. Instead, the analysis should consider "[t]he process received during this time, the further process that was available to [the alien], and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered." *Id*. The Ninth Circuit further held that it was "important not to overstate the strength of Petitioner's showing under the first *Mathews* factor." *Id*. at 1213. Two offsetting considerations warrant highlighting here. First, Petitioner was given a bond hearing on March 3, 2026, where the government bore the burden to show Petitioner presented an unreasonable risk of danger to the community or a flight risk by clear and convincing evidence. The immigration judge concluded that Petitioner was a danger to the community and denied bond. (ECF No. 18-2.) And second, like *Rodriguez Diaz*, Petitioner's interests are "further diminished by the fact that he is subject to an order of removal from the United States." 53 F.4th at 1208. Thus, the first interest tips slightly in favor of the government.

7

In the second factor, the court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where a detainee "has not received any bond or custody redetermination hearing[.]" *Jimenez*, 2020 WL 510347, at *3. In this case, however, Petitioner received a bond hearing where an immigration judge inquired into his detention and concluded he posed a risk of danger. This inquiry took place recently. *Rodriguez Diaz* held that a section 1226(a) detainee who had also received an earlier bond hearing before an immigration judge could not tip this second *Mathews* factor in his favor because "the agency's decision to detain [petitioner] was subject to numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker." 53 F.4th at 1210. So too here. Under Section 1226(a), Petitioner can request another bond hearing before an immigration judge should there be a material change in circumstances. The court concludes, therefore, that the probable value of offering a further bond hearing shortly after his previous March 2026 hearing is low. The second factor favors the government.

In the third factor, the court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. The government's aim of "protecting the public from dangerous criminal aliens" and "increas[ing] the chance that, if ordered removed, the aliens will be successfully removed" are "interests of the highest order that only increase with the passage of time." *Rodriguez Diaz*, 53 F.4th at 1208 (quotations omitted). As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, No 19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. March 25, 2020) (collecting cases). Here, the government's interest is tied to Petitioner's prior criminal history and a recent determination by an immigration judge that he posed a risk of danger. In that prior hearing, the government carried its burden to show Petitioner presented an unreasonable risk of danger to the community by clear and convincing evidence. Given (1) the recency of Petitioner's

bond hearing, (2) the government's interests in protecting the public and assuring Petitioner's presence for removal, and (3) the fiscal and administrative burdens on the government in conducting another bond hearing so shortly after Petitioner's last hearing, the government's interests outweigh Petitioner's interest.

On balance, the *Mathews* factors weigh in the government's favor and outweigh Petitioner's interest in a second bond hearing. To the extent Petitioner takes issue with the bond hearing itself, Petitioner can exercise his appellate rights before the Board. Should circumstances materially change, he can request a subsequent custody hearing.

RECOMMENDATION

Accordingly, the court hereby RECOMMENDS that Petitioner's motion for ruling on the petition, (ECF No. 14), be GRANTED, Petitioner's motion for expedited relief, (ECF No. 15), be DISMISSED as moot, and the petition for writ of habeas corpus be DENIED.

These findings and recommendation are submitted to the United States district court judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy of these findings and recommendation, a party may file written objections with the court and serve a copy on all parties. *Id*. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The court will not consider exhibits attached to the objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. The district judge may disregard any pages filed in excess of the fifteen (15) page limitation. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

IT IS SO ORDERED.

Dated:    **May 26, 2026**    _____

UNITED STATES MAGISTRATE JUDGE